IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds,<br><br>Plaintiffs,<br><br>v.<br><br>DRESDEN CONCRETE, INC., an Illinois corporation also d/b/a DRESDEN OF ILLINOIS, INC., an Illinois corporation,<br><br>Defendant. | FILED: JULY 25, 2008<br>08CV4233<br>Case No. JUDGE LEFKOW<br>MAGISTRATE JUDGE DENLOW<br>AEE |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorneys, Patrick T. Wallace, Jerrod Olszewski, Christina Krivanek, Amy N. Carollo, and Charles Ingrassia for their Complaint against Defendant Dresden Concrete, Inc. also d/b/a Dresden of Illinois, Inc., state:

## COUNT I

### (Failure To Timely Pay Employee Benefit Contributions)

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2)

and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, federal common law, and 805 ILCS 5/1 et seq.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Dresden Concrete, Inc. also d/b/a Dresden of Illinois, Inc., (hereinafter "Dresden" or the "Company") is and was at all times relevant an Illinois corporation. The Company does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

2

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and Dresden are parties to successive collective bargaining agreements ("Agreement") the most recent of which became effective June 1, 2006. (A copy of the "short form" Agreement entered into between the Union and Precision which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds Dresden to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCMC"), the CARCO Industry Advancement Fund ("CARCO"), and the Illinois Small Pavers Association ("ISPA") to act as an agent in the collection of contributions due to those funds.

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and

Declarations of Trust, contributions which are not submitted in a timely fashion are assessed 20 percent liquidated damages plus interest.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10. The Agreement obligates the Company to obtain and maintain a surety bond to ensure payment of future wages, pension and welfare contributions.

11. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a) failed to submit timely reports and contributions to Plaintiff Laborers' Pension Fund for the months of June 2008 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to submit timely reports and contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the months of June 2008 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay all contributions owed to Laborers' Training Fund from June 2008 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d) failed to report and pay all contributions owed to one or more of the other affiliated funds identified above from June 2008 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

(e) failed to submit timely payment of benefit contributions for the period of August through October 2007 and April through May 2008. Under the terms of the Agreement, the Company owes $22,273.39 in liquidated damages, plus interest on the late August through October 2007 and April through May 2008 reports.

12. The Company's failure to submit payment of benefit contributions and failure to submit timely payment of benefit contributions violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA, 29 U.S.C. §185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

13. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, 805 ILCS 5/1 et seq., and the terms of the Agreement and the Funds' respective Trust Agreements, the Company is liable to the Funds for unpaid contributions, accumulated interest and liquidated damages on the late reports, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Dresden Concrete, Inc. also d/b/a Dresden of Illinois, Inc.:

a. ordering the Company to submit its books and records to an audit upon demand for the period of February 1, 2006 forward;

b.  entering judgment in sum certain against the Defendant on the amounts due and owing pursuant to the audit including contributions, interest, liquidated damages, accumulated liquidated damages and interest on late reports, audit costs, and attorneys' fees and costs; and

c.  awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Union Dues)

For a cause of action against Defendant Dresden Concrete, Inc. also d/b/a Dresden of Illinios, Inc.:

14. Plaintiffs reallege paragraphs 1 through 10 of Count I.

15. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

16. The Company failed to submit timely payment of dues for the period of July through November 2007 and March through May 2008. Under the terms of the Agreement, the Company owes $1,508.88 in liquidated damages, plus interest on the late July through November 2007 and March through May 2008 reports.

17. Pursuant to the Agreement, the Company is liable to the Funds for the unpaid union dues, liquidated damages, and reasonable attorneys' fees and costs as the Union's collection agent and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Dresden Concrete Inc also d/b/a Dresden of Illinois, Inc. ordering the Company to submit its books and records on demand to an audit for the period of February 1, 2006 forward, entering judgment in favor of the Funds and against the Company for the Union dues owed together with all dues, liquidated damages, audit costs, attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

July 25, 2008                                                                                     Laborers' Pension Fund, et al.

/s/ Amy Carollo

Office of Fund Counsel
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd.
Suite 1415
Chicago, IL  60604
(312) 692-1540



**HEADQUARTERS OF**
# Construction & General Laborers'
## District Council of Chicago and Vicinity

Affiliated with the Laborers' International Union of North America, A. F. of L. - C. I. O.

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • TELEPHONE: 237-7537

## MEMORANDUM OF JOINT WORKING AGREEMENT

It is hereby stipulated and agreed by and between _Dundee Concrete_ hereinafter called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION," representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, and 1092, and encompassing the geographical areas of the Counties of Cook, Lake, Du Page, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. The EMPLOYER hereby recognizes the UNION as the sole and exclusive bargaining agent for all laborers employed by the EMPLOYER in the geographical areas listed above with respect to their wages, hours of work, fringe benefits, and all other terms and conditions of employment.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Chicagoland Association of Wall and Ceiling Contractors, Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1980, together with all amendments thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which (he) (it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and is become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if (he) (it) had signed the original copies of the Trust instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare and Pension Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to strike or to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management, or operation of the EMPLOYER'S business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The negotiated wage rates as evidenced in the various Collective Bargaining Agreements shall be increased June 1, 1986 as follows:

| | |
|---|---|
| June 1, 1986 | Sixty (.60¢) cents increase in the Hourly Scale. (From $14.20 per hour to $14.80 per hour) |
| May 31, 1987 | Welfare contributions remain the same at One Dollar Thirty-two ($1.32) cents per hour to the Health and Welfare Fund. |
| | Pension contributions remain the same at One Dollar Thirty ($1.30) cents per hour to the Pension Fund. |
| | MCIAF remains the same at $0.02 Cents per hour. |
| | Training Fund Contributions are to be paid at Five Cents (.05¢) per hour. |
| | Dues Deduction is .20¢ cents per hour for each hour worked. (.20) cents |
| June 1, 1987 - May 31, 1988 | A Fifty Cents (.50) increase into wages bringing base rate to $15.30 and an additional Five Cents (.05) into Training fund bringing the total to Ten Cents (.10) Cents, existing Fringe Benefits and Dues Deduction remain unchanged. |
| June 1, 1988 - May 31, 1989 | There is an Eighty Cent (.80) Increase that has not been allocated. |

All additional wage rate, dues checkoff, or fringe benefit increases as negotiated after May 31, 1989, shall be incorporated in this Memorandum of Agreement.

7. Effective October 1, 1976, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of Ten Cents ($.10) for each straight-time hour worked and Ten Cents ($.10) for each overtime hour worked, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through the 31st day of May, 1989, and shall continue thereafter unless there has been given not less than sixty (60) days' written notice by registered or certified mail, by either party hereto, of its desire to modify and amend this Agreement through Negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Memorandum of Agreement and extending this Agreement for the life of the newly negotiated contract.

10. The employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

Dated at _181 ST County Club H_ this _6th_ day of _November_ 19_86_

**ACCEPTED:**

Laborers' Local Union _5_

By: _(signature) Prendergast_

**CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY**

By: _Ernest Kumerow_
Ernest Kumerow, President

By: _James Caporale_
James Caporale, Secretary-Treasurer, Business Manager

_Dundee Concrete_ (Employer)

By: _Paul Dahle, Pres._
(Name & Title)

_171 Ontario_
ONTARIO

_815-469-0530_
(Telephone)

60473

**TRUST FUND**

EXHIBIT A



HEADQUARTERS OF

**Construction & General Laborers' District Council of Chicago and Vicinity**

Affiliated with the Laborers International Union of North America, A. F. of L. - C. I. O.

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • TELEPHONE: 237-7537

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, 1092, 1094

Joseph A. Lombardo, Jr.
Secretary-Treasurer

Ernest Kumerow
President
Business Manager

# LABORERS' INTERIM COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between ~~Dresden Castle Inc.~~ herein called the "EMPLOYER," and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION," representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, 1092 and 1094, and encompassing the geographical areas of the Counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

WHEREAS the Mid-America Regional Bargaining Association (MARBA) on behalf of the Employer Associations it represents in area wide bargaining and the UNION have not reached a bargaining agreement to be effective June 1, 1991 and

WHEREAS the parties to this Agreement seek to promote continued employment in the industry, prevent interruption of work, strikes, picketing and inconvenience to the public,

It is therefore agreed as follows:

1. EMPLOYER, in response to the UNION's claim that it represents an uncoerced majority of each EMPLOYERS' laborer employees, acknowledges and agrees that there is no good faith doubt that the UNION has been authorized to and in fact does represent such majority of laborer employees. Therefore, the UNION is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board Certified Election.

2. The EMPLOYER acknowledges that he was bound to all terms and conditions of the Collective Bargaining Agreement between the UNION and the Associations as applicable to him which expired at 12:00 midnight, May 31, 1991, and hereby reaffirms his continuing obligation with respect to all such provisions, acknowledges the renewal of all such provisions to the extent the same are not inconsistent with the provisions of this Agreement, and hereby agrees to the changes in the Agreement between the UNION and the Associations and all subsequent amendments thereto and to any other changes subsequently negotiated by and between the UNION and the applicable Association. Said contracts are specifically incorporated by reference and made a part hereof. In the event of a conflict the Interim Agreement shall supersede and control.

3. The Collective Bargaining Agreement between the UNION and Associations (effective on June 1, 1991, and all subsequent amendments thereto) are incorporated herein as if they were set forth in full. The EMPLOYER agrees to be bound by the terms of the applicable Association bargaining agreement for the life of the negotiated agreement upon its ratification and acceptance.

4. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Chicagoland Association of Wall and Ceiling Contractors, Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, Fox Valley General Contractors Association, Contractors Association of Will and Grundy Counties, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1988, together with all amendments thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of the local UNION is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Interim Agreement.

5. The EMPLOYER agrees to pay the amounts which (he)(it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and LABORERS' TRAINING FUND, and to become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if (he)(it) had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

6. Employees covered by this Interim Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by a collective bargaining agreement with the Laborers' District Council of Chicago and Vicinity. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

7. Employer agrees to pay an increase of Seventy Five ($.75) Cents per hour in wages to equal $16.00 per hour in wages for the period June 1, 1991 to May 31, 1992 and thereafter such amounts the UNION may allocate in its sole discretion. For the period June 1, 1991 to May 31, 1992, EMPLOYER agrees to pay the present contribution rate of $1.97 welfare and $1.80 pension plus such additional sums as the UNION notifies EMPLOYER are due and owing.

8. In order to secure observance of the provisions of this Agreement, each job may at the UNION'S sole discretion have a steward who shall be the second man on the job. On any job which may employ five (5) or more laborers at any time during the duration of the project, the steward shall be placed and appointed by the Business Manager of the UNION in whose jurisdiction the project is located.

On projects that will not exceed five (5) laborers at any time during the project, the Business Manager in whose jurisdiction that project is located may in the UNION's sole discretion appoint a steward from the existing work force. If a dispute arises on the project involving a contract violation, the Business Manager shall place a steward on the project as a replacement.

Such steward shall be subject to the same terms of employment as any other Employee, but taking into consideration that the steward should be present during all working hours, all possible overtime work shall be assigned to all stewards, if the stewards do not replace another Laborer from that other Laborers' previously assigned duties and shall be the second to the last employee laid off on the project.

9. In the event of any change in the ownership, management or operation of the Employer's business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the Employer, whether corporate or otherwise.

10. That this document is the complete written agreement between the parties and can only be amended in writing by the parties. No other oral representations shall be binding on either party nor shall any party rely upon such oral statements that vary the terms of the written contract.

11. In the event subsequent negotiations between the Associations and the UNION increase the benefits beyond those provided in this Agreement, then all additional benefits shall be paid retroactive to June 1, 1991. If, however, the Agreements between the Associations and the UNION, requires payment of less than that required herein, then neither the UNION, the Funds nor the employees shall be required to reimburse the Employer for any monies paid pursuant to the terms of this Interim Agreement. It is further understood and agreed that, should the negotiations between the UNION and the applicable Association result in an economic settlement, in excess of the increase provided for by this Agreement, then this Agreement shall be automatically amended to provide for any such additional increases.

12. This Agreement shall become effective at 12:01 a.m., June 1, 1991 and shall remain in full force and effect until 12:00 midnight May 31, 1992 or the length of the newly negotiated Associations area wide contract, whichever is longer, and shall continue thereafter unless there has been given not less than sixty (60) nor more than ninety (90) days written notice by registered or certified mail prior to expiration by either party hereto of the desire to modify, amend or terminate this Agreement through negotiations. In the absence of such notice the Employer and the UNION agree to be bound by the new area wide negotiated contracts with the applicable Association incorporating them into this Interim Agreement and extending this Agreement for the life of the newly negotiated contract.

13. The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

IN WITNESS WHEREOF, and in consideration of the mutual promises of the parties hereto, and other good valuable consideration, this Agreement was entered into this 10 day of May, 1991.

ACCEPTED:

Laborers' Local Union No. 5

By: Thomas Pinckard

CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: Ernest Kumerow
Ernest Kumerow, President Business Manager

By: Joseph A. Lombardo, Jr.
Joseph A. Lombardo, Jr. Secretary-Treasurer

Dresden Castle Inc.
(Employer)

By: Paul Dresden Pres
(Print Title)

14349 Manhattan - Monee Rd.
(Address)

815-469-0530
(Telephone)

TRUST FUND

JW5D